IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT HANDY, | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 19-1028 |
| DELAWARE RIVER SURGICAL SUITES, LLC d/b/a BUCKS COUNTY SURGICAL SUITES, et al., | |
| Defendants. | |

**Slomsky, J.**                                                        **May 19, 2022**

## OPINION

## I.    INTRODUCTION

Before the Court are the Objections of Nominal Defendant Thomas E. Mackell d/b/a Bucks

County Orthopedic Specialists' ("BCOS") to the Report and Recommendation ("R&R") of Special

Master James J. Rohn, Esquire, dated November 18, 2021.  (See Doc. No. 246.)  On March 12,

2019, Plaintiff Dr. Robert Handy ("Dr. Handy" or "Plaintiff") brought this derivative action

pursuant to Federal Rule of Civil Procedure 23.1[1] on behalf of BCOS against Defendant Delaware

---

[1]    Rule 23.1 states in pertinent part:

(a) Prerequisites**.**  This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.

(b) Pleading Requirements.  The complaint must be verified and must:

(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law.

River Surgical Suites, LLC d/b/a Bucks County Surgical Suites ("the Surgical Center"), and against individual Defendants Kieran Cody, M.D., Charles B. Burrows, M.D., Ninad Sthalekar, M.D., Thomas H. Vikoren, M.D., Sean Butler, D.O., Jung Park, M.D., Douglas A. Boylan, M.D. (the "Individual Defendants"), and Thomas E. Mackell, M.D., Ltd. d/b/a Bucks County Orthopedic Specialists ("BCOS").   (Doc. No. 245 at 1.)   The action is brought under the Lanham Act, 15 U.S.C. § 1125(a), alleging that, with assistance of Individual Defendants, Defendant Surgical Center, another medical facility, adopted and continues to use a logo (the "Infringing Logo") that is confusingly similar to BCOS's famous trademark that BCOS has used for years.  (Id.)  (See also Doc. No. 227 at 6.)  BCOS filed a Motion to Dismiss the Complaint, arguing that Dr. Handy does not have standing to bring a derivative suit under Federal Rule of Civil Procedure 23.1.  (See Doc. No. 4.)

On August 24, 2021, the Court entered an Order referring BCOS's Motion to Dismiss to the Special Master for a R&R on whether Dr. Handy has standing to bring this derivative suit.  If he does have standing, the Complaint will survive the Motion to Dismiss.[2]  (See Doc. No. 242.) On November 18, 2021, the Special Master issued the R&R, finding that Dr. Handy does have standing and recommending that this Court deny the Motion to Dismiss.  (See Doc. No. 245.)

---

[2]   The Court referred the following filings to the Special Master: BCOS's Motion to Dismiss (Doc. No. 4), Dr. Handy's Response in Opposition to the Motion to Dismiss (Doc. No. 8), BCOS's Reply to Dr. Handy's Response (Doc. No. 16), Dr. Handy's Supplemental Memorandum (Doc. No. 227), BCOS's Supplemental Memorandum (Doc. No. 228), BCOS's Opposition to Dr. Handy's Supplemental Memorandum (Doc. No. 231), and the parties' Replies to the Oppositions (Doc. Nos. 238 and 239).  (Doc. No. 242.)  In their Objections to the Special Master's Report, BCOS asked the Court to review its Brief Regarding Plaintiff's Status as a Shareholder (Doc. No. 73) and its Response to Dr. Handy's Brief Regarding his Standing (Doc. No. 93).  The Court has read both filings and the others mentioned here, which were considered when deciding whether to adopt the Special Master's R&R.

BCOS has filed objections to the R&R and Dr. Handy has filed a Reply to the objections.  (See Doc. No. 246.)  (See also Doc. No. 247.)

Pursuant to Federal Rule of Civil Procedure 53(f)(3)-(4),[3] objections to both the Special Master's findings of fact and conclusions of law are reviewed de novo.  Thus, the Court has conducted a de novo review of the record in its entirety, including BCOS's objections.  Based upon this review, the Court will overrule BCOS's Objections and adopt the Special Master's Report and Recommendation, recommending that the Court deny BCOS's Motion to Dismiss on the ground that Dr. Handy has standing.  Furthermore, the Court has concluded that Dr. Handy has standing for additional reasons not mentioned in the R&R, which will be discussed in detail infra.

## II.      STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 23.1

In order to maintain a derivative action, a complaint must comply with the procedural requirements of Federal Rule of Civil Procedure 23.1.  (See Doc. No. 245 at 4.)  This Rule "applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce."  Fed. R. Civ. P. 23.1(a).  In addition, "[t]he derivative action may not be

---

[3]    Rule 53, which governs the appointment of a Special Master, provides in relevant part:

(f) Action on the Master's Order, Report, or Recommendations.

(3) Reviewing Factual Findings.  The court must decide de novo all objections to findings of fact made or recommended by a master

…

(4) Reviewing Legal Conclusions.  The court must decide de novo all objections to conclusions of law made or recommended by a master.

maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Id.

Under Rule 23.1(b), a complaint must do the following:

> (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law; …
>
> (2) state with particularity:
>
>> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
>>
>> (B) the reasons for not obtaining the action or not making the effort[4]

Further, it has been held that "the ownership requirement must continue throughout the suit and that the action will abate if the plaintiff ceases to be a shareholder before termination of the litigation." (See Doc. No. 245 at 5) (quoting Wright & Miller, Federal 106 Practice and Procedure § 1826, Plaintiff Must Be a Shareholder at the Time of Suit). This is known as the "continuous ownership requirement." (Id.) (citing Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.), 677 F.3d 178, 182-83 (3d Cir. 2012)). If a complaint does not comply with these requirements, it must be dismissed under Federal Rule of Civil Procedure 12(b)(6). (Id.)

### B. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[4]   Federal Rule of Civil Procedure 23.1(b)(2)(A)-(B) is not at issue in the instant Motion to Dismiss. Thus, it will not be further addressed.

statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 556 U.S. at 678).[5]

## III.   BACKGROUND

### A.  Factual Background

As noted, the following facts as set forth in the Complaint are taken as true.  BCOS is a corporation specializing in orthopedic medicine.  (Compl. ¶¶ 21-22.)  Since 1999, BCOS used a distinct "running man" logo that "appeared on BCOS signage, the BCOS website, and BCOS marketing materials."  (Id. ¶ 23.)  Dr. Handy and Individual Defendants comprised all of BCOS's shareholders at the time of Dr. Handy's termination.  (Id. ¶ 36-37.)

---

[5]   Further, "[w]hen deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  Aubrey v. City of Bethlehem, Fire Dept., 466 Fed.Appx.88, 91 (3d Cir. 2012) (citing Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).  Usually, considering material outside the pleadings, like the Court is here, would convert the Motion to Dismiss into a Motion for Summary Judgment.  Id. However, a court may permit parties to engage in limited discovery when issues of standing are raised in a Motion to Dismiss.  Jarmen v. Capital Blue Cross, 998 F.Supp.2d 369, 378 (M.D. Pa 2014).  The facts uncovered during standing discovery may be considered by a court when deciding a Motion to Dismiss.  Turicentro, S.A. v. American Airlines Inc., 303 F.3d 293, 300 (3d Cir. 2002).

For part of 2016 and 2017, Dr. Handy was deployed to Jordan with the Pennsylvania Army National Guard.[6]  (See Doc. No. 227 at 6.)  Around August 2017, Individual Defendants, not including Dr. Handy, formed a new medical facility, referred to as the "Surgical Center."  (Compl. ¶ 44.)  The Surgical Center then started using a similar "running man" logo in its marketing materials.  (Id. ¶ 58, 59.)  On March 12, 2019, Dr. Handy brought this derivative action, raising claims of unfair competition in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) (Count I) and common law trademark infringement and unfair competition (Count II).  He also sought injunctive and monetary relief (Count III).  (See Doc. No. 245 at 2.)  On May 7, 2019, Dr. Handy's employment with BCOS was terminated.  (See Doc. No. 227 at 6.)

**B.  BCOC's Motion to Dismiss**

On April 8, 2019, BCOS filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Dr. Handy does not have standing to bring this derivative lawsuit under Federal Rule of Civil Procedure 23.1.  (Doc. No. 4.)  BCOS asserts two reasons for Dr. Handy's lack of standing: 1) his interests are antagonistic to the class and 2) he does not have continuous ownership of BCOS stock pursuant to the Second Amended and Restated Shareholders' Agreement ("the Shareholders' Agreement"), which the parties do not dispute was in effect at the time of Dr. Handy's termination.  (See Doc. No. 245 at 2.)

---

[6]   Dr. Handy claims that he faced harassment and retaliation from Individual Defendants before, during, and after his deployment.  (See Doc. No. 227 at 15.)

In terms of antagonistic interests, BCOS points to both a previous action filed by Dr. Handy in state court against BCOS[7] and his related lawsuit pending before this Court.[8]  Dr. Handy maintains, however, that his other cases against BCOS do not create antagonistic interests.  (Doc. No. 227 at 8.)

Additionally, BCOS contends that Dr. Handy does not have continuous ownership of BCOS stock because he is not a BCOS shareholder.  BCOS advances three reasons why Plaintiff is no longer a shareholder:  1) the Shareholder Agreement required Dr. Handy to sell all of his shares when his employment with BCOS ended for any reason; 2) the Court in the Bucks County Litigation "held that a court cannot compel BCOS to reinstate Dr. Handy's employment and the principles of res judicata and collateral estoppel apply to this holding";[9] and 3) even if a court

---

[7]   Dr. Handy had filed a lawsuit against BCOS and Individual Defendants in the Bucks County Court of Common Pleas.  (See Doc. No. 245 at 7.)  In the Bucks County case, Dr. Handy requested preliminary injunctive relief in the form of reinstatement of his employment with BCOS.  (See Doc. No. 228-3 at 6.)  The Bucks County Court denied the request for a preliminary injunction, stating that the Pennsylvania Supreme Court has held that, after termination of an employment contract, whether wrongful or not, the employee cannot seek reinstatement of his or her employment. (Id.) (citing McMenamin v. Philadelphia Transp. Co., 51 A.2d 703, 703 (Pa. 1947)).

[8]   See Handy v. Thomas E. Mackell, M.D. Ltd. d/b/a/ Bucks County Orthopedic Specialists, et al., 19-cv-2357.  This lawsuit is a direct suit against BCOS, in which Plaintiff claims he was wrongfully terminated under both his employment agreement and the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301, et seq.  This case is currently in suspense pending the resolution of the instant Motion to Dismiss.

[9]   Here, res judicata and collateral estoppel do not bar the Special Master's or the Court's finding that Dr. Handy has standing.  "The doctrine of res judicata provides that a final judgment on the merits entered by a court of competent jurisdiction bars any subsequent action on the same claim between the same parties or those in privity with them."  Roodveldt v. Merril Lynch, Pierce, Fenner & Smith, Inc., 585 F.Supp. 770, 775 (E.D. Pa. 1984) (citing Davis v. United States Steel Supply, 688 F.2d 166, 170 (3d Cir. 1982)).  "Collateral estoppel is an aspect of res judicata and precludes [re-]litigation of a fact or an issue of law previously determined against a party or its privy in a prior suit on a different claim."  Id. at 776.

The Bucks County decision denied Dr. Handy's request for a preliminary injunction, in which he sought reinstatement of his employment at BCOS.  (See Doc. No. 228-3 at 9.)  "It is well

could compel BCOS to reinstate Dr. Handy, the court "cannot force BCOS or Dr. Handy's former partners to reinstate him as a shareholder." (See Doc. No. 245 at 13-14.) (See also Doc. No. 228 at 25.) In his response, Dr. Handy asserts that he is still a BCOS shareholder because he has never offered to sell his shares and that BCOS has never fully redeemed them. (See id. at 20-26.) Thus, he meets the continuous ownership requirement and has standing. (See id.)

After initial briefing and argument by the parties, on October 17, 2019 the Court permitted the parties to take fact discovery "on the issue of Plaintiff's status as a shareholder of BCOS." (Id. quoting Doc. No. 52.) After the close of discovery, the Court allowed the parties to file supplemental briefs on BCOS's Motion to Dismiss. (Doc. No. 245 at 2-3.) On June 28, 2021, the Court referred the Motion to Dismiss and related filings to the Special Master for an R&R. (Id.) The Special Master issued his R&R on November 18, 2021. (See id.)

## IV.    SPECIAL MASTER REPORT AND RECOMMENDATION

### A. The Special Master found that Dr. Handy's interests are not antagonistic to BCOS.

In the R&R, the Special Master found that Dr. Handy's interests are not antagonistic to BCOS. As noted earlier, a derivative suit may not be maintained if it appears that Plaintiff does not fairly and adequately represent the interests of similarly situated shareholders in enforcing the right of the corporation. (Id.) When determining whether a plaintiff will be an adequate representative, the Court examines the following: 1) plaintiff's attorney must be qualified, experienced and generally able to conduct the litigation, and 2) plaintiff must not have interests antagonistic to those of the class. (Id. at 9) (citing Vanderbilt v. Geo-Energy Ltd.,725 F.2d 204,

---

established in Pennsylvania, as elsewhere, that a ruling on a motion for preliminary injunction is merely provisional, not binding on the court or the parties in subsequent proceedings." Roodveldt, 585 F.Supp. at 776. "A preliminary injunction is not a final judgment entitled to preclusive effect." Id. Thus, the doctrines of res judicata and collateral estoppel do not bar a finding that Dr. Handy has standing in the instant action.

207 (3d Cir. 1983)).  The focus of BCOS's Motion to Dismiss is the second prong, whether Dr.

Handy has antagonistic interests to those of the class.  The first prong is not in dispute.

     The Special Master set forth the factors a court should consider when determining whether

a plaintiff has interests antagonistic to those of the class:

> [E]conomic antagonisms between representative and class; the
> remedy sought by plaintiff in the derivative action; indications that
> the named plaintiff was not the driving force behind the litigation;
> plaintiff's unfamiliarity with the litigation; other litigation pending
> between the plaintiff and defendants; the relative magnitude of
> plaintiff's personal interests as compared to his interest in the
> derivative action itself; plaintiff's vindictiveness toward the
> defendants; and, finally, the degree of support plaintiff was receiving
> from the shareholders he purported to represent.

Vanderbilt v. Geo-Energy Ltd., 725 F.2d 204, 207 (3d Cir. 1983) (the "Vanderbilt factors").[10]  Each

factor as considered by the Special Master will be discussed in turn.

### 1.  Economic antagonism between the representative and the class.

     The Special Master found that Dr. Handy does not have economic antagonism with BCOS

and its shareholder class.  In its Motion to Dismiss and subsequent filings, BCOS contends that

Dr. Handy's direct suit currently pending before this Court, Handy v. Thomas E. Mackell, M.D.

Ltd. d/b/a Bucks County Orthopedic Specialists, et al., 19-cv-235, and his dismissed Bucks County

lawsuit, demonstrate economic antagonism.  (Doc. No. 245 at 9.)  Specifically, "Dr. Handy is

purporting to represent BCOS's interests while simultaneously seeking damages from it."  (Id.)

(quoting Doc. No. 4-2 at 9 and Doc. No. 228 at 9-10.)  On the other hand, Dr. Handy argues that

---

[10]  The following Vanderbilt factors are not contested by BCOS and need not be further covered:
1) the remedy sought by plaintiff in the derivative action; 2) indications that the named plaintiff
was not the driving force behind the litigation; and 3) plaintiff's unfamiliarity with the
litigation.  (See Doc. No. 245 at 11.)

there is no economic antagonism because he is seeking "the preservation of BCOS's intellectual property interests." (Id. at 9-10) (quoting Doc. No 8 at 7.)

The Special Master took judicial notice of both Dr. Handy's related pending lawsuit and the dismissed Bucks County litigation. (Id. at 10.) In analyzing economic antagonism, the Special Master noted that "[c]ourts have recognized that the representative plaintiff might use the derivative action as leverage to obtain a favorable settlement in other actions brought against the corporation." (Id.) (quoting Recchinon on Behalf of Westinghouse Elec. Corp v. Kirby, 637 F.Supp. 1309, 1315 (W.D. Pa. 1986)). Additionally, where there is "substantial likelihood that the derivative action will be used as a weapon in the plaintiff shareholder's arsenal, and not as a device for the protection of all shareholders," courts have "properly refused to permit the derivative action to proceed." (Id.) (internal citation and quotation omitted.)

In reasoning that this factor weighs in Dr. Handy's favor, the Special Master determined that "there has been no averment in the Complaint or evidence adduced through limited discovery on standing demonstrating that there is a substantial likelihood that this action will be used as a weapon in Dr. Handy's arsenal." (Id.) (citing Recchion, 637 F. Supp. at 1315.) The Bucks County lawsuit has already been dismissed and BCOS has failed to show how this action will be weaponized in the other action before this Court. (Id.) Thus, the Special Master concluded this factor weighs in favor of Dr. Handy.[11] (Id.)

---

[11] The Special Master then explained that this same analysis relates to another Vanderbilt factor, whether there is other litigation pending between the plaintiff and defendant. (See Doc. No. 245 at 11.) For the same reasons explained above, the Special Master determined that this factor also weighs in Dr. Handy's favor. (Id.)

    **2.  The relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself.**

Next, the Special Master found that Dr. Handy has an interest in the derivative action itself, apart from any personal interests.  (Id. at 12.)  BCOS contends that "there is a substantial risk that Dr. Handy will utilize the instant litigation to gain leverage against the Individual Defendants." (Id.) (quoting Doc. No. 4-2 at 9 and Doc. No. 228 at 40.)  The Special Master noted that this argument is not on point for this factor, where the primary inquiry "is Dr. Handy's personal interests, as compared to his interest in this lawsuit."  (Id.)  The Special Master then explained:

> [R]egardless of his interests in any other litigation, he has an interest in this lawsuit because, accepting the allegations as true as required by Fed. R. Civ. P. 12(b)(6), Dr. Handy is a shareholder of BCOS, and the Surgical Center, with the support of the Individual Defendants, has adopted and is using the "Infringing Logo" which is "confusingly similar to BCOS's famous trademark" to the detriment of BCOS. (Compl. at ¶ 2-4, 24.)

(Id.)  Therefore, the Special Master found that this factor weighs in Dr. Handy's favor.

    **3.  Plaintiff's vindictiveness toward the defendants.**

Moreover, the Special Master found no evidence of vindictiveness by Plaintiff toward Defendants.  (Id.)  In its Motion, BCOS argues that Dr. Handy's claims "are based on his allegedly wrongful termination and the pleadings themselves are filled with vitriol directed to BCOS and the shareholders." (Id.) (quoting Doc. No. 228 at 40.)  However, the Special Master points out that Dr. Handy was not terminated until nearly two months after he filed this lawsuit.[12]  (Id.) (quoting Doc. No. 228 at 4 and Doc. No. 8 at 9.)  This timeline shows that he did not file this derivative suit as vengeance for his allegedly wrongful termination.  (Id.)  Thus, this factor weighs in Dr. Handy's favor.

---

[12]  The Special Master also noted that Dr. Handy's termination post-dated the Bucks County Litigation.  (See Doc. No. 245 at 12.)

4. **The degree of support plaintiff is receiving from the shareholders he purports to represent.**

Finally, the Special Master concedes that Dr. Handy does not have any support from the shareholders he purports to represent. (Id. at 13.) BCOS correctly asserts that Dr. Handy has no support from BCOS shareholders, all of which are Individual Defendants. (Id.) This factor therefore weighs against Dr. Handy. (Id.)

However, because seven of the eight Vanderbilt factors weigh in Dr. Handy's favor, the Special Master concluded that Plaintiff's interests are not antagonistic to those of the class. (Id.) Therefore, Dr. Handy fairly and adequately represents the interests of the shareholders of BCOS and he can maintain this derivative action. (Id.)

B. **The Special Master found that Dr. Handy has continuous ownership of BCOS stock.**

As for continuous ownership, the Special Master determined that Dr. Handy has continuous ownership of BCOS stock because he never offered to sell his shares to BCOS and BCOS has not redeemed his shares. BCOS counters that Dr. Handy does not have standing to bring the derivative suit because the Shareholders' Agreement required Dr. Handy to sell his shares upon termination from BCOS. (See Doc. No. 245 at 13) (See also Doc. No. 228.)

To show that Dr. Handy does not have continuous ownership, BCOS primarily relies on the Pennsylvania Supreme Court decision DeVries v. Westgren, 287 A.2d 437 (Pa. 1971). DeVries involved an action for specific performance to compel a former employee to offer his shares of stock back to his employer. DeVries, 287 A.2d at 437. Similar to the BCOS Shareholders' Agreement here, the stock purchase agreement at issue in DeVries read: "Upon the termination of employment with the Company of any Individual Shareholder for any reason whatsoever, except for reason of death of such Individual Shareholder, such Individual Shareholder shall offer all of

12

his Common stock in the manner, upon the terms and at the prices set forth hereafter." Id. at 438. The DeVries court held that this language created two options for the employer: rejection or acceptance of the employee's stock. Id. at 438-39. By filing the action for specific performance, the Pennsylvania Supreme Court found that this constitutes the employer's acceptance of the employee's offer to sell the stock. Id. at 439.

BCOS contends that DeVries stands for the proposition that that when an event triggers a shareholder's mandatory obligation to sell the shareholder's shares back to the corporation, the shareholder cannot avoid the sale by refusing to act. (See Doc. No. 246 at 3.) Nonetheless, Dr. Handy asserts he is still a BCOS shareholder because he never offered to sell his shares and that BCOS never fully redeemed them. (Doc. No. 227 at 20-23.) Therefore, he meets the continuous ownership requirement and has standing. (See id.)

As stated, two of the requirements for standing under Rule 23.1 are: 1) that the plaintiff was a shareholder or member at the time of complained transaction and 2) that the plaintiff's ownership continues throughout the suit. (See Doc. No. 245 at 5) (discussing Fed. R. Civ. P. 23.1)). The Special Master notes that the parties do not dispute that Dr. Handy was a shareholder at the time of the challenged transaction: the adoption and use of the Infringing Logo by the Surgical Center. (Doc. No. 245 at 14.)

The Special Master next articulates that the gravamen of the parties' dispute is whether Dr. Handy's shares were redeemed under the Shareholders' Agreement and whether that Agreement required redemption of his shares. (Id. at 15.) If Dr. Handy's shares were not redeemed, as Dr. Handy argues, then he is a shareholder for purposes of standing to bring the derivative action. (Id.) (See also Doc. No. 227 at 20-21.) If his shares were redeemed, then he is no longer a shareholder and cannot meet the continuous ownership requirement.

The Shareholders' Agreement states, in relevant part:

> 4.      Mandatory Sale and Purchase
>
> (a)      A shareholder shall offer to sell to the Corporation all of Shareholder's Shares upon the occurrence of any of the following:
>
> > (i)      the Shareholder's death;
> >
> > (ii)      the Shareholder's withdrawal from, or the cessation or termination of, his full-time employment with Corporation at any time and for any reason;[13]
> >
> > (iii)      the Shareholder's disqualification from the practice of medicine;
> >
> > (iv)      the adjudication of a Shareholder's bankruptcy, an assignment for the benefit of the Shareholder's creditors or the administration of the Shareholder's assets in any type of creditor's proceeding; or
> >
> > (v)      notice by another Shareholder that an option to purchase the Shareholder's Shares is being exercised.

The Special Master found that there is no evidence that Dr. Handy offered to sell his shares and there is no evidence that BCOS redeemed his shares.  (Doc. No. 245 at 16.)  Further, Dr. Cody, BCOS's corporate designee, testified that Dr. Handy's shares have not been fully redeemed.  (Id.)

---

[13]      In his filings here, Dr. Handy argues that he was wrongfully terminated under both his employment agreement and the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301, et seq.  Because he asserts that he was wrongfully terminated, he argues that he still has an equitable interest in his BCOS stock and thus meets the continuous ownership requirement.  Because the language in the Shareholders' Agreement required selling shares upon termination "for any time and for any reason," the Special Master did not discuss whether Dr. Handy was wrongfully terminated, believing it was irrelevant to Dr. Handy's status as a shareholder under the Shareholders' Agreement.  See DeVries, 287 A.2d 438.  The Court, however, discusses the termination more fully because it is relevant to the standing issue.

The Special Master also added that both the <u>DeVries</u> case and certain principles of equity support his analysis.[14] As for the <u>DeVries</u> case, the Special Master stated as follows:

> <u>DeVries</u> supports the Special Master's analysis. Like the shareholder agreement in <u>DeVries</u>, the Shareholders' Agreement here requires Dr. Handy to offer to sell his shares. Like the appellant in <u>DeVries</u>, Dr. Handy has not made that offer. The allegations and evidence here show that Dr. Handy was terminated from BCOS. Upon his termination, the governing Shareholders' Agreement requires him to offer to sell BCOS all of his shares. (Shareholders' Agreement, Doc. No. 227-15 at § 4.) There is no evidence that Dr. Handy has made that offer.

Therefore, the Special Master concluded that Dr. Handy has standing to bring this derivative suit because he has continuous ownership of BCOS stock.

## V.     OBJECTIONS

On November 29, 2021, BCOS filed objections to the Special Master's R&R, raising four objections. (Doc. No. 246.) First, BCOS takes issue with the Special Master's failure to address Section 5 of the Shareholders' Agreement. (<u>Id.</u> at 2.) This Section provides:

---

[14]   The Special Master explained:

> As discussed in <u>First American Corp. v. Al-Nahyan</u>, 17 F. Supp. 2d 10, 21-22 (D. D.C. 1998), the concept of the continuous ownership requirement for lawsuits brought by shareholders, which originated before the pronouncement of Fed. R. Civ. P. 23.1, was to "avoid so-called 'strike suits' and other speculative litigation." And as explained in <u>Nat'l Union Elec. Corp. v. Matsushita Elec. Indus. Co.</u>, Ltd., 498 F. Supp. 991, 996 (E.D. Pa. 1980), the "original purpose of the contemporaneous ownership requirement was to prevent transfers of shares to a nonresident owner in order to confer federal diversity jurisdiction."

> (Doc. No. 245 at 18.) The Special Master explains that there is no evidence that "this litigation is speculative, of questionable merit, or concocted only to confer jurisdiction." (<u>Id.</u>) Therefore, principles of equity support his determination that Dr. Handy is a BCOS shareholder and he meets the continuous ownership requirement of Rule 23.1. (<u>Id.</u>)

> 5. <u>Date of Sale.</u>  The Date of Sale is the earliest date of any offer to Corporation pursuant to Section or the date of any occurrence pursuant to Section 4, as the case may be.

(<u>Id.</u>)  The occurrence referred to in Section 4 that BCOS relies on is Dr. Handy's termination.  (<u>Id.</u>) BCOS states that Section 5 "expressly provides that the sale of Dr. Handy's shares occurred by operation of law on the date of termination of Dr. Handy's employment at BCOS."  (<u>Id.</u> at 2-3.) Second, BCOS asserts that the <u>DeVries</u> case is binding precedent that required Dr. Handy to sell his shares.  (<u>Id.</u> at 3.)  Third, BCOS argues that the Special Master failed to consider Dr. Handy's deposition testimony where he admits he is no longer a shareholder.  (<u>Id.</u> at 4) (citing Doc. No. 228 at 10-14) (Dr. Handy testified "[i]f I am no longer an employee, I give up my rights as a shareholder and must sell my shares …).

Fourth, BCOS again argues that Dr. Handy has antagonistic interests.  (<u>Id.</u> at 4-5.) Specifically, it takes issue with the Special Master's analysis of two of the <u>Vanderbilt</u> factors: 1) other litigation between plaintiff and defendant and 2) plaintiff's vindictiveness towards defendant. (<u>Id.</u>)  BCOS focuses on Dr. Handy's prior Bucks County lawsuit and his other suit for wrongful termination before this Court.  (<u>Id.</u>)  Further, BCOS believes that Dr. Handy vindictively filed this lawsuit after receiving his notice of termination.  (<u>Id.</u> at 5.)

On December 8, 2021, Dr. Handy filed his response to BCOS's objections.  (<u>See</u> Doc. No. 247.)  He asserts that Section 5 is not applicable here because the conditions of Section 4 of the Shareholders' Agreement were not met, i.e. he never offered to sell his shares.  (<u>Id.</u> at 2.) Additionally, Dr. Handy asserts that the <u>DeVries</u> case is not controlling in the instant case because the procedural postures are different.  (<u>Id.</u> at 3.)  Specifically, Dr. Handy notes that in <u>DeVries</u>, the company sued a shareholder to compel the shareholder to sell his shares pursuant to a right of first refusal.  (<u>See</u> Doc. No. 247 at 3.)  Thus, Handy argues that <u>DeVries</u> does not stand for the

proposition that the sale of Dr. Handy's shares occurred by "operation of law" upon termination from BCOS. (Id.) Finally, he argues that his deposition testimony should be disregarded because he testified about a conclusion of law and he is not a lawyer. (Id. at 3-4.)

In terms of whether his interests are antagonistic to BCOS, Dr. Handy agrees with the Special Master's assessment that he did not file this derivative action in order to be vindictive, especially since he filed this lawsuit prior to his termination from BCOS. (Id. at 4-5.) Additionally, he agrees with the Special Master that "BCOS has filed to demonstrate how this instant action would be 'weaponized' in his direct suit." (Id.) He concludes by calling attention to the fact that BCOS did not object to the Special Masters analysis of the other Vanderbilt factors, and thus the factors, on balance, still weigh in his favor. (Id. at 5.)

## VI.   ANALYSIS

As noted, there are two standing requirements under Rule 23.1 that are at issue in BCOS's Motion to Dismiss: 1) whether Dr. Handy's interests are antagonistic to the class and 2) whether Dr. Handy has continuous ownership of BCOS stock pursuant to the Shareholders' Agreement. (See Doc. No. 245 at 2.) The Special Master found that Dr. Handy's interests are not antagonistic to BCOS and that he has continuous ownership of BCOS stock because "[t]here is no evidence that Dr. Handy has sold his shares" and "[t]here is no evidence that BCOS has redeemed his shares." (Doc. No. 245 at 16.)

As outlined above, in its objections (Doc. No. 246) BCOS asserts that: 1) the Special Master failed to address Section 5 of the Shareholders' Agreement (id. at 2.); 2) the Special Master misconstrued binding Pennsylvania Case Law (the DeVries decision); 3) the Special Master erred in disregarding Dr. Handy's deposition testimony where he admits he is no longer a shareholder

(id. at 4) (citing Doc. No. 228 at 10-14); and 4) the Special Master erred in determining that Dr. Handy's interests are not antagonistic to those of BCOS.

This Court has conducted a de novo review of all objections, as well as the record in its entirety. Based on this review, the Court will adopt the Report and Recommendation of the Special Master. In addition, the Court finds that Dr. Handy has continuous ownership of BCOS stock because BCOS has not fully redeemed his shares under the buy-out provision of the Dr. Boylan's employment agreement ("Boylan Agreement"). Moreover, this contention, as well as each of BCOS's objections, will be addressed in turn.

**A. The Court will overrule BCOS's objection to the Special Master's analysis of the <u>Vanderbilt</u> factors and find that Dr. Handy's interest are not antagonistic to BCOS.**

Starting with the last objection, the Court agrees with, and will affirm, the Special Master's finding that, under the <u>Vanderbilt</u> factors, Dr. Handy's interests are not antagonistic to BCOS. Because the Court agrees with the Special Master, the analysis of each <u>Vanderbilt</u> factor does not need repeating. Even with BCOS's objections, the <u>Vanderbilt</u> factors still, on balance, weigh in Dr. Handy's favor. Moreover, the Court notes that, while in the other federal case Dr. Handy is seeking damages for wrongful termination, the remedies sought do not override the legitimacy of the claims here: seeking to vindicate harm to BCOS. In this regard, the two suits appear to complement each other. Thus, the Special Master's R&R regarding whether Dr. Handy's interests are antagonistic to BCOS will be approved and adopted.

**B. Dr. Handy has continuous ownership of BCOS stock because he never offered to sell his shares to BCOS and they were not redeemed under the Boylan Agreement.**

The Special Master found that Dr. Handy had continuous ownership of BCOS because "[t]here is no evidence that Dr. Handy has sold his shares" and "[t]here is no evidence that BCOS has redeemed his shares." (Doc. No. 245 at 16.)

In his supplemental brief on standing, Dr. Handy asserts three arguments as to why he has continuous ownership of BCOS stock: 1) he never offered to sell his shares to BCOS and BCOS has never paid him for his shares; 2) he has an equitable interest in BCOS stock because he was unlawfully terminated; and 3) his standing enhances the goal of Federal Rule of Civil Procedure 23.1.[15]  (See Doc. No. 227 at 18-19.)  Relevant to these assertions and the Court's analysis are three different agreements: 1) the Shareholders' Agreement, 2) Dr. Handy's employment agreement (the "Handy Agreement"), and 3) the Boylan Agreement.

### 1.  The Shareholders' Agreement

In his findings of fact and conclusions of law, the Special Master relied solely on the Shareholders' Agreement.[16]  (See Doc. No. 245 at 15-16 n.5.)  After a review of the record and BCOS's objections, the Court agrees with and will adopt the Special Master's Report and Recommendation concerning the Shareholder's Agreement.  The unambiguous language of the Shareholders' Agreement requires that, for there to be a mandatory sale and purchase of a shareholder's shares, the shareholder must offer his shares to the BCOS.  Here, Dr. Handy never offered to sell his shares to BCOS and thus BCOS could not have redeemed his shares.  Moreover,

---

[15]  Because the Court is finding that he has standing on two separate grounds, it need not reach whether Dr. Handy's standing enhances the goal of Rule 23.1.  However, the Court notes that it agrees with and will adopt the finding of the Special Master that there is no evidence that "this litigation is speculative, of questionable merit, or concocted only to confer jurisdiction" and thus principles of equity support the determination that Dr. Handy is a BCOS shareholder and he meets the continuous ownership requirement of Rule 23.1.  (Id.)

[16]  The Special Master noted that which employment agreement was in effect at the time of Dr. Handy's termination (the "Handy Agreement" or the "Boylan Agreement") is immaterial because the operative Shareholders' Agreement required Dr. Handy to offer to sell his shares upon termination "at any time and for any reason."  (Doc. No. 245 at 15-16 n.5) (See also Doc. No. 227-15 at § 4(a)(ii)).

BCOS never took any action to enforce the terms of the Shareholder's Agreement.[17]   Therefore, Dr. Handy remains a BCOS shareholder.

### 2. The buy-out provision of the Boylan Agreement creates in Dr. Handy a legal and equitable ownership interest in his BCOS shares.

Additionally, after a <u>de novo</u> review of the record in its entirety, Dr. Handy also has standing under the terms of the buy-out provision of the Boylan Agreement because he has legal and equitable ownership of his BCOS shares.   In this regard, throughout discovery, there was disagreement regarding which employment agreement governed the terms of Dr. Handy's employment with BCOS.   (<u>See</u> Doc. No. 227 at 7.)   (<u>See also</u> Doc. No. 228 at 10.)   The disagreement centered around what the parties referred to as "the 1996 Policy," defined as follows: "the most recently signed employment agreement governed each of the Shareholders' employment relationships with BCOS."   (Doc. No. 228 at 3.)   It is undisputed that Dr. Boylan had the most recently signed employment agreement (the "Boylan Agreement").   (<u>Id.</u> at 10.)   Therefore, under the 1996 Policy, the Boylan Agreement governed the employment relationship between Dr. Handy and BCOS, rather than his own employment agreement, dated March 1, 2007.   As an aside, the main difference between the two employment agreements is that the Handy Agreement required for-cause termination, while the Boylan Agreement provided that an employee could be terminated without cause on 120 days' notice.   (<u>See</u> Doc. No. 232 at 2; <u>see also</u> Doc. No. 228 at 10.)

---

[17]   This latter point is what differentiates Dr. Handy's case from the <u>DeVries</u> case.   In <u>DeVries</u>, the employer brought an action for specific performance to compel a former employee to sell his shares back to the employer pursuant to a shareholders' agreement.   287 A.2d at 437-38. In this case, BCOS took no action when Dr. Handy did not offer to sell his shares.   (Doc. No. 227 at 21.)

After careful review of the record, it is apparent that the parties agree that the Boylan Agreement governs the buy-out of Dr. Handy's shares in BCOS.[18]  BCOS claims that the Boylan Agreement governs the entirety of Dr. Handy's employment with BCOS, both termination and buy-out, while Dr. Handy, as noted, testified that the Boylan Agreement only governed buy-out. (See Doc. No. 228 at 41.)  The following is a relevant portion of Dr. Handy's deposition:

> Q: If I understand your testimony correctly, when Dr. Boylan signed his employment agreement, that had the effect, for lack of a better term, **of modifying the buy-out provisions of what you consider to be your employment agreement; is that correct?**
>
> Dr. Handy: That's my understanding, yeah. …
>
> **…. My understanding was that our buy-out is now the buy-out under the Boylan agreement.**
>
> So, for example, if the termination of Dr. Handy goes through, which is what we are trying to avoid today and tomorrow and Wednesday, **my understanding is I'll be paid back according to Dr. Boylan's agreement.**
>
> Q: So your understanding is, even though your employment termination is governed by what you testified to being a 2007 agreement, **the effect to you of that termination in terms of the compensation or buy-out – to use your term – that you receive will be governed by a separate agreement, the Boylan agreement, right?**
>
> A: Right.  I would say that termination is termination.  That's one issue.  And that the finances of that – which is the finances of buying-in, making money, buying-out – is a completely different issue.
>
> And I see them as such.  And I believe that my contract determines my termination, and believe that his contract determines all of our buy-outs.

---

[18]   It should be noted that Dr. Handy submits that his termination is governed by the Handy Agreement, but the buy-out of his shares is governed by the Boylan Agreement.

(Id. at 12) (emphasis added).  Thus, while the parties contest whether Dr. Handy's termination was governed by the Handy Agreement or the Boylan Agreement, it is evident that the parties agree that the buy-out provisions of the Boylan Agreement govern the payout of shares post-termination.[19]

The Boylan Agreement buy-out provisions state the following:

> 10. Buy-out Provisions.
>
> (a) Upon termination of employment as a shareholder for any reason while the Agreement is effect, including death, disability (under Section 4(e)), retirement as a shareholder, or full retirement from service to Corporation, Physician shall be entitled to an amount reflecting the value of his contribution to the growth and development of Corporation, as hereinafter set forth.
>
> Except as otherwise provided in Section l0(f) hereof, the total value of Physician's buyout amount, including the redemption of his shares (the "Boylan Total Value"), shall equal Physician's Average Annual Compensation. "Average Annual Compensation" is defined as the total compensation paid to Physician, as evidenced on his W-2 statement for three (3) completed corporate fiscal years of employment immediately prior to or coincident with his last day of employment as a shareholder (excluding any profit sharing contributions made on behalf of Physician) divided by three (3 )
>
> (b) The Boylan Total Value includes **the payment for the redemption of Physician's shares in Corporation.** The value of the shares shall be the Modified Net Book Value of the corporate stock, as defined in the Shareholders' Agreement, as of the date of Physician's departure from Corporation as a shareholder divided by the number of shareholders at the time of Physician's departure. Corporation shall pay to the departing Physician the value of the shares in the manner prescribed by the Shareholders' Agreement. **The difference between the Boylan Total Value and the Modified Net Book Value shall be the amount paid as Severance Compensation over sixty (60)**

---

[19]   As stated, whether Dr. Handy agreed to the termination provisions of the Boylan Agreement is an issue ultimately to be decided in Dr. Handy's direct suit against BCOS for unlawful termination.

**months, without interest, subject to the limitations and conditions as specified below.**[20]

---

[20]  It is worthwhile to note that even under the Handy Agreement, upon his termination, Dr. Handy is entitled to the deferred compensation, which includes payment for the value of his shares in BCOS, payable over sixty months.  (Doc. No. 227 at 23.)  The relevant portion of the agreement is excerpted below:

> **Upon termination of employment as a partner for any reason while the Agreement is effect [sic], including death, disability (under Paragraph 3(c)),** retirement as a partner, or full-retirement from service to the Corporation, Physician shall be entitled to an amount reflecting the value of his contribution to the growth and development of the Corporation, as hereinafter set forth.
>
> Physician shall be paid a total buy-out amount (the "Total Value"), including the redemption of shares, shall be equal to twelve (12) months' Average Monthly Compensation. Average Monthly Compensation is defined as the total compensation paid to Physician as evidenced on his W2 statement as "Medicare Wages" for the most recently ended fiscal year, divided by twelve (12).
>
> The Total Value shall include the payment for the redemption of the departing Physician's shares in the Corporation. The value of the shares shall be the Modified Net Book Value of the corporate stock, as defined in the Shareholder Agreement, as of the date of Physician's departure from the Corporation as a shareholder divided by the number of shareholders at the time of Physician's departure. The Corporation shall pay to the departing Physician the value of the shares in the form of cash and/or a five (5) year promissory notes, as mutually agreed upon by the parties. The difference of the **Total Value minus the Modified Net Book Value shall be the amount paid as "Deferred Compensation" over sixty (60) months, without interest subject to the limitations and conditions as specified below.**
> …
>
> Subject to the restrictions specified herein, Deferred Compensation payments shall be made as follows. Except in the case of partial retirement, Employee's Deferred Compensation will be payable in sixty (60) equal monthly installments, without interest commencing on the first calendar month following the date of employment termination. Ex. 23, ¶ 9 (emphasis added).

(Doc. No. 227 at 23) (emphasis added).  Thus, even under the Handy Agreement, Dr. Handy's shares will still not be fully redeemed for sixty months, or five years.

(c) Subject to the restrictions specified herein, Severance Compensation payments shall be made as follows:

(1) Except in the case of partial retirement, Physician's Severance Compensation **will be payable in sixty (60) equal monthly installments, without interest, commencing on the first day of the first calendar month following the date of employment termination.**

(<u>See</u> Doc. No. 227-13 at 11) (emphasis added).

Additionally, as acknowledged by the Special Master in the R&R, Dr. Cody, BCOS's corporate designee, testified that Dr. Handy's shares have not been fully redeemed.

Q. Well, where is the company in the process of the share redemption for Dr. Handy's shares?

A. I'm not certain exactly how far along in the process we are at this point.

Q. But you agree that the redemption process [began] in May of 2019?

A. Yes,

Q. And do you also agree that the redemption process has not finished as of today?

A. Yes.

Q. And the redemption process takes over five years?

A. Uhm, there is two components. There's the stock value and the delayed salary, and the stock redemption occurs quicker than five years.

Q. And so how long does the stock redemption process take?

A. I'm not exactly sure.

Q. But that process has not finished yet?

A. To the best of my knowledge, it has not finished yet.

…

24

Q. But you agree that both the stock redemption process and severance pay process, that both processes are still ongoing as of today?

A. No. I believe the severance pay has been put on hold because he violated his noncompete.

Q. Meaning that the Company has not fully redeemed Dr. Handy's shares as of today?

A. I believe that's the case.
…
Q. Under the shareholders' agreement, the redemption process is designed to take place over five years; do you agree?

A. I believe that is the case.

Q. So that means since Dr. Handy's redemption process began in May 2019, he would be fully redeemed by – his shares would be fully redeemed by on or about May of 2024?

A. Correct. That would be five years after May of 2019.

(See Doc. No. 228 at 12-13.)  (See also Doc. No. 245 at 16.)

Based on this testimony and the buy-out provisions under the Boylan Agreement, it is apparent that Dr. Handy's shares have not been fully redeemed and will not be redeemed for some time.[21]  Accordingly, under this buy-out provision, Dr. Handy has both an equitable and a legal interest in his BCOS stock and thus has standing to bring this derivative suit.  See Schupack v. Covelli, 498 F.Supp. 704, 706 (W.D. Pa. 1980) (noting that when a shareholder's stock ownership is transferred pursuant to a payment plan the shareholder retains both an equitable and legal interest

---

[21]   BCOS claimed it redeemed Dr. Handy's shares on June 4, 2019 by sending him one check to purchase one-quarter of his shares and a promissory note for the remaining shares to be paid in full over the course of three years.  (See Doc. No. 20.)  However, Dr. Handy, through his counsel, returned both the promissory note and the check because Dr. Handy was contesting both his termination and the forced redemption of his shares.  (See Doc. No. 21.)  Thus, as of the date of this Opinion, Dr. Handy has still not been paid in cash for his shares, which entitles him to a legal and equitable ownership interest in his BCOS stock.  (See Doc. No. 227 at 26.)

in those shares until payment obligations are fulfilled).[22]  With this in mind, the Court will turn to each of BCOS's objections that relate to the issue of continuous ownership.

### 3.  BCOS's Objections

BCOS's first three objections are interrelated and concern whether Dr. Handy has continuous ownership of BCOS stock.  In this regard, as noted, the objections are: 1) the Special Master failed to address Section 5 of the Shareholders' agreement; 2) the Special Master misconstrued binding Pennsylvania Case Law (the DeVries decision); and 3) Dr. Handy admitted in his deposition that he is no longer a shareholder.  Each objection will be considered next.

#### a.  Objection 1:  the Special Master failed to address Section 5 of the Shareholders' Agreement.

As to BCOS's first objection, it asserts that the Special Master failed to consider Section 5 of the Shareholders' Agreement.  While the language of this Section is quoted above, it bears repeating here:

> 5.  Date of Sale.  The Date of Sale is the earliest date of any offer to Corporation pursuant to Section or the date of any occurrence pursuant to Section 4, as the case may be.

---

[22]  In his supplemental briefing, Dr. Handy also argues that he has an equitable interest in his shares of BCOS stock because he was wrongfully terminated without cause under both the Handy Agreement (which he contends is the operative agreement) and the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301, et seq.  In response, BCOS argues that the Boylan Agreement governed his termination and that he was not wrongfully terminated under that agreement.  Because Dr. Handy's other pending action in this Court against BCOS is based on this same unlawful termination argument, the Court will not address this argument here, as it is a factual issue ultimately to be decided in the other case.

Further, this argument is unavailing because, as noted by the Special Master, the third Agreement, the Shareholders' Agreement, required Dr. Handy to offer to sell his shares upon termination "at any time and for any reason."  (Doc. No. 245 at 15-16 n.5) (See also Doc. No. 227-15 at § 4(a)(ii)).  Thus, whether Dr. Handy's termination was wrongful is irrelevant to the issue of standing.

BCOS argues that Dr. Handy's termination was an "occurrence" as outlined in Section 4 of the Shareholders' Agreement, so the date of sale of his BCOS stock would be the date of termination, or May 7, 2019.  In response, Plaintiff states that Section 5 is not applicable because one of the conditions of Section 4, Dr. Handy offering to sell his shares, has not been met.

The Court agrees with Dr. Handy that Section 5 is not applicable because he never offered to sell his shares.  However, even apart from Section 5, Dr. Handy still has standing to bring this derivative suit because Section 5 of the Shareholders' Agreement does not change or affect the Boylan buy-out provision, which states that Dr. Handy's shares will not be fully redeemed for five years after termination.  This gives him a legal and equitable ownership interest in his shares.  Therefore, Dr. Handy still has standing to bring this derivative suit and BCOS's objection is overruled.

### b. Objection 2:    the Special Master misconstrued binding Pennsylvania Case Law.

The next objection is that the Special Master misconstrued binding Pennsylvania case law, specifically the DeVries decision.  (See Doc. No. 246 at 3-4.)  Dr. Handy asserts to the contrary that the DeVries case is not controlling because the procedural postures are different.  (See Doc. No. 247 at 3.)

As previously discussed, DeVries dealt with an employer seeking specific performance to compel a former shareholder/employee to offer shares of his stock back to the employer, pursuant to a shareholders' agreement that is similar to the BCOS Shareholders' Agreement.  See DeVries, 287 A.2d at 437-38.  The court held that the shareholder agreement created two options for the employer: rejection or acceptance of the stock.  Id. at 438-39.  By filing the action for specific performance, the Pennsylvania Supreme Court found that this constitutes acceptance of the employee's offer to sell the stock.  Id. at 439.  Thus, this case does not stand for the proposition

that Dr. Handy's shares were sold by operation of law, as suggested by BCOS, regardless of whether or not Dr. Handy offered to sell his shares.  The objection is therefore overruled.

### c. Objection 3:  Dr. Handy admitted in his deposition that he is no longer a shareholder.

Finally, BCOS argues that the Special Master failed to consider Dr. Handy's deposition testimony where he admits he is no longer a shareholder.  (Doc. No. 246 at 4) (<u>See</u> <u>also</u> Doc. No. 228 at 10-14).  Specifically, Dr. Handy testified, "[i]f I am no longer an employee, I give up my rights as a shareholder and must sell my shares."  (<u>See</u> Doc. No. 228-9 at 7.)  In response, Dr. Handy contends that this testimony should not be considered because he is not a lawyer and he testified to an ultimate legal issue.  (Doc. No. 247 at 3-4.)

This testimony does not change the Court's analysis.  Despite the testimony, the buy-out provision in the Boylan Agreement would still be in effect.  The buy-out provision and Dr. Cody's accompanying testimony, <u>supra</u>, show that Dr. Handy's shares were never be fully redeemed.  This objection is overruled.

## VII.   CONCLUSION

For the foregoing reasons, the Court will overrule BCOS's Objections and will adopt the Special Master's Report and Recommendation.  Moreover, the Court finds that Dr. Handy has standing to bring the derivative suit for the reasons stated in this Opinion.  Therefore, BCOS's Motion to Dismiss (Doc. No. 4) will be denied.  An appropriate Order follows.